1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GRANT SCOTT PARKISON, JR.,

11              Petitioner,              No. 2:12-cv-1275 KJN P

12        vs.

13   TIM VIRGA,

14              Respondent.              <u>ORDER</u>

15   _____/

16        Petitioner is a state prisoner, proceeding without counsel, in this habeas corpus

17   action filed on May 11, 2012, pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2008

18   conviction and sentencing.  This matter is before the court on respondent's motion to dismiss, on

19   the ground that petitioner initiated this action beyond the one-year statute of limitations, and is

20   not entitled to equitable tolling.  <u>See</u> 28 U.S.C. § 2244(d).  Respondent alternatively contends

21   that petitioner failed to exhaust one of the two claims asserted in his petition.  Petitioner opposes

22   respondent's motion pursuant to his contention that he is entitled to equitable tolling, based on

23   his medical condition and the allegedly incorrect advice of his appellate counsel.

24        For the reasons set forth below, the court grants respondent's motion to dismiss.

25   ////

26   ////

1

I. <u>Statute of Limitations</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides in pertinent part:

> A 1-year period of limitation shall apply to an
> application for a writ of habeas corpus by a person
> in custody pursuant to the judgment of a State court.
> The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by
> the conclusion of direct review or the expiration of
> the time for seeking such review . . . .

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitation period.  28 U.S.C. § 2244(d)(2).

The relevant chronology in this case is as follows:

1. On June 12, 2008, petitioner was convicted of involuntary manslaughter; a sentencing enhancement was found to be true.  (Abstract of Judgment, Butte County Superior Court, Case No. CM027413 (Resp. Lodged Doc. 1).)

2. On July 8, 2008, petitioner was sentenced to state prison for a determinate term of fourteen years.  (<u>Id</u>.)

3. On January 28, 2010, pursuant to petitioner's timely appeal of his conviction and sentence, the California Court of Appeal, Third Appellate District affirmed the superior court's judgment and sentence.  (Opinion, Calif. Court of Appeal, Third App. Dist., Case No. C059407 (Resp. Lodged Doc. 2).)

4. On April 14, 2010, pursuant to petitioner's Petition for Review filed February 23, 2010 (Resp. Lodged Doc. 3), the California Supreme Court summarily denied review. (Order, Calif. Supreme Court, Case No. S180475 (Resp. Lodged Doc. 4)).

////

1      5.  Petitioner did not file any state court habeas petitions.  (Dkt. No. 8 at 2.)

2      6.  On April 29, 2012, petitioner filed the instant federal habeas petition.

3      Pursuant to this chronology, the deadline for petitioner to seek direct review of his

4  conviction and sentence was July 13, 2010, the expiration of the ninety-day period for filing a

5  petition for writ of certiorari with the United States Supreme Court, following the California

6  Supreme Court's denial of review on April 14, 2010.  Supreme Court Rule 13; Bowen v. Roe,

7  188 F.3d 1157 (9th Cir. 1999).

8      Thus, the one-year limitation period for filing the instant federal petition, pursuant

9  to 28 U.S.C. § 2244(d)(1), commenced on July 14, 2010.  Patterson v. Stewart, 251 F.3d 1243,

10  1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)).  Absent a period of tolling, the last day for

11  filing the instant petition was July 13, 2011.  Petitioner filed his petition ten months later, on May

12  11, 2012.

13      Petitioner concedes that he filed the instant petition after expiration of the

14  limitations period, but contends that he is entitled to equitable tolling due to his serious medical

15  condition and the allegedly incorrect advice of his appellate counsel.

16      The United States Supreme Court has held that "a litigant seeking equitable

17  tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights

18  diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo,

19  544 U.S. 408, 418 (2005); see also Lawrence v. Florida, 549 U.S. 327, 328 (2007) (assuming

20  without deciding that equitable tolling applies to Section 2244(d)).  "[T]he purpose of equitable

21  tolling 'is to soften the harsh impact of technical rules which might otherwise prevent a good

22  faith litigant from having a day in court."  Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008).

23  "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the

24  rule."  Lakey v. Hickman, 633 F.3d 782, 786 (9th Cir. 2011) (citations and internal quotation

25  marks omitted); see also Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006).  The

26  "determination is highly fact-dependent and [petitioner] bears the burden of showing that

equitable tolling is appropriate." <u>Espinoza-Matthews v. California</u>, 432 F.3d 1021, 1026 (9th Cir. 2005).  A habeas petitioner seeking equitable tolling must show that the extraordinary circumstances alleged were the "but for" and proximate cause of the untimely filing of his federal petition.  <u>Bryant v. Arizona Attorney General</u>, 499 F.3d 1056, 1061 (9th Cir. 2007); <u>Allen v. Lewis</u>, 255 F.3d 798, 800-01 (9th Cir. 2001).  "A petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence."  <u>Bryant</u>, 499 F.3d at 1061 (citing <u>Roy v. Lampert</u>, 465 F.3d 964, 973 (9th Cir. 2006)); <u>see</u> <u>also</u> <u>Shannon v. Newland</u>, 410 F.3d 1083, 1090 (9th Cir. 2005) (observing that in each of the cases in which equitable tolling has been applied, the requisite "extraordinary circumstances" have been based on the "wrongful conduct" of another that "actually prevented the prisoner from preparing or filing a timely habeas petition").  Thus, equitable tolling of the AEDPA statute of limitations is unavailable in most cases.  <u>Corjasso v. Ayers</u>, 278 F.3d 874, 877 (9th Cir.2002); <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir.1999).

Petitioner asserts that he is entitled to equitable tolling based on the allegedly extraordinary circumstances associated with petitioner's "serious medical conditions that limit his ability to comprehend or understand the law."  (Dkt. No. 11 at 1.)  Petitioner initially described these conditions as follows in his petition for writ of habeas corpus (Dkt. No. 1 at 15-6):

> Petitioner has had serious medical issues that have caused numerous delays in his ability to be of any assistance in his own legal defense.  More directly, the Petitioner has had two brain surgeries in the past five years in order to attempt to remove a tumor that has caused seizures throughout his life.  Although the tumor was diagnosed as being benign, the surgery involved removing parts of Petitioner's brain.  As a consequence, Petitioner has lost part of his vision and a part of his comprehension abilities.  By no means is the Petitioner asking the court for sympathy because of these medical issues, but one must ask where does the justice begin if in fact there has been a clear case of injustice.  Petitioner's writ of Habeas Corpus was due no later than July 14th, 2011, so there is not a significant delay past the deadline.  His mental ability to attack this sentence was not registering in his brain until after the time restraints were already over.  The

4

1         Petitioner believed that after his direct appeal was affirmed and the
California Supreme Court denied review that all further avenues of
2    appeal were completed and he was at the end of his appeals
process.  This is Petitioner's first time sentenced to a State prison
3    and his comprehension of law is minimum to say the least.  It is
only when he conversed with another inmate and discussed his
4    case did Petitioner learn that he could pursue a "collateral attack,"
which unfortunately was discovered after July 14, 2011.

5

6         In support of this statement, petitioner attached the following exhibits (Dkt. No.

7  at 62-7 (presented chronologically herein)):

8         Exhibit 3(a):  December 3, 2008 report of brain MRI, finding "no
abnormal enhancement or evidence of an acute process" based on
9    "previous occipital craniotomy."

10        Exhibit 3(e):  June 29, 2009 CDCR Classification Chrono noting
petitioner's enrollment in the Chronic Care Program, and
11    permanent limitations to Modified Duty (including vision
impairments, and preclusions from climbing and heavy lifting, as
12    well as the possibility that petitioner's conditions "may affect
mental alertness or performance").
13

14        Exhibit 3(b):  February 10, 2010 report of brain MRI, finding
changes consistent with "history of postsurgical change and
15    encephalomalacia," but no evidence of "recurrent or residual
malignancy."

16        Exhibit 3(c-d):  February 15, 2011 letter from UCD Neurologist D.
Kaur, M.D., to CDCR physician A. Traquina, M.D., noting
17    petitioner's 2005 surgery to resect a left occipital ganglioglioma
that had caused plaintiff seizures.  Dr Kaur noted that petitioner
18    had been seizure free since late 2005, and was presently
experiencing fewer headaches at the rate of two to three per week,
19    rather than daily.  Dr. Kaur opined that petitioner should continue
taking "Keppra 500 mg twice a day;" the facility physician should
20    continue monitoring and adjusting petitioner's migraine
medications; and petitioner should follow up at the UCD epilepsy
21    clinic in a year.

22        Exhibit 3(f):  October 28, 2011 CDCR "Physician Request for
Services," seeking routine outpatient neurological consultation for
23    petitioner's migraine headaches, authorized on October 31, 2011;
subsequent December 8, 2011 report of consultation by Dr.
24    Mitchell who noted symptoms of headaches ("usually daily"), with
nausea, vomiting and photosensitivity, and "still has brief lapses in
25    awareness;" Dr. Mitchell noted that plaintiff regularly took
amitriptyline, and added Topomax, a migraine preventive, in place
26    of propranolol, with a followup scheduled in eight weeks.

1

2    In his opposition to respondent's motion to dismiss, petitioner further asserts, in

3    pertinent part (Dkt. No. 11 at 2):

> Petitioner's physician, a CDCR health care provider, concluded
> that he was tumor and seizure free since late 2005.  However, the
> fact that Petitioner is seizure free does not mean he did not obtain
> life long complications due to these surgeries.  Brain surgery is one
> of the most serious and complicated surgeries one may endure as
> the process of quantifying and or qualifying its effects can be
> subjective.  The objective fact is that Petitioner had part of his
> brain removed and consequently his abilities are limited as shown
> in such exhibits.  Petitioner has ultimately shown this court through
> Habeas Petition that the Superior Court handed down an unlawful
> sentence . . . . Brain surgery, along with false information from his
> appeal attorney that all options for further appeals were exhausted,
> are as viable as you can get when you do not comprehend the law.

11    The court has construed petitioner's arguments in tandem with his pertinent

12    medical records (see discussion, infra).  In essence, petitioner contends that, since his two brain

13    surgeries in 2005 (also, petitioner acquired spinal meningitis after the second surgery), he

14    remains visually impaired (loss of peripheral vision and reduced depth perception), his

15    comprehension capacity is reduced, and petitioner experiences frequent and severe headaches.

16    Respondent has submitted petitioner's relevant medical records.  (Dkt. No. 22

17    (Resp. Lodged Documents. 7-9).)  These records include petitioner's non-institutional medical

18    reports from 2004 to 2012 (Resp. Lodged Doc. 7); institutional medical records during the one-

19    year limitations period from July 14, 2010, through July 13, 2011 (Resp. Lodged Doc. 8); and

20    institutional medical records for the period July 14, 2011, through April 29, 2012, the date

21    petitioner filed the instant petition (Resp. Lodged Doc. 9).

22    Petitioner's non-institutional medical records, including recent brain MRIs

23    conducted February 10, 2010, and April 23, 2012, reveal no significant changes in petitioner's

24    condition, nor in his subjective complaints.

25    Petitioner's institutional medical records during the one-year limitations period

26    (from July 14, 2010, through July 13, 2011), show regular complaints of headaches, removal of a

1   cyst from petitioner's scalp, and adjustments to petitioner's medications.  On May 9, 2011,

2   petitioner was placed in the administrative segregation unit ("ASU"), due to an altercation with

3   another inmate.  (Resp. Lodged Doc. 8 at 43.)  A "MERD" (minimum eligibility release date) of

4   April 7, 2012 was noted.  (Id.)  On May 10, 2011, petitioner was admitted to the Correctional

5   Clinical Case Management System ("CCCMS") for mild depression.  (Resp. Lodged Doc. 8 at

6   18-22.)  On May 11, 2011, mental health staff noted that plaintiff was already taking

7   amitriptyline ("Elavil") for chronic pain; no other psychiatric medications were prescribed.  (Id.

8   at 22.)  On May 17, 2011, petitioner was diagnosed with major "Depressive Disorder, Recurrent,

9   Mod[erate]."  (Id. at 24, 34.)  Precipitating factors included petitioner's history of seizures and

10  surgery; adjustments to his first prison term; petitioner's pending disciplinary proceedings and

11  related concerns about receiving a third strike; and missing his minor son.  (Id. at 24-42.)

12  Petitioner's concentration, attention and memory were routinely found to be within normal limits

13  although "affected by surgery."  (Id. at 27, 32.)  Petitioner was noted to be "intelligent" and had

14  "many skills."  (Id. at 28.)  At the May 17, 2011 Interdisciplinary Treatment Team ("IDTT")

15  meeting, it was noted that "effective communication [with petitioner] was easily established."

16  (Id. at 38; see also id. at 41 ("effective communication achieved and maintained").)  Petitioner

17  remained in the ASU through July 13, 2011, the date the subject statute of limitations expired.

18  (Id. at 63.)

19          Institutional medical records for petitioner, for the period July 14, 2011, through

20  April 29, 2012, indicate that petitioner experienced an increase in the frequency and severity of

21  his headaches.  (See, e.g., Resp. Lodged Doc. 9 at 17 (Oct. 28, 2011 treatment note prescribing

22  increased amount of popranolol for daily headaches); at 36 (Mar. 29, 2012 treatment note that

23  plaintiff "still has a headache daily"); at 39 (Apr. 9, 2012 treatment notes that petitioner "gets 5

24  or 6 migraines a day (sic) that are associated with a visual aura and nausea and vomiting); see

25  also id. at 4, 6, 7, 9, 10, 28).  It was routinely found that petitioner's cognitive abilities (defined

26  as fund of information, intellectual functioning, concentration, attention and memory) were

1    within normal limits.  (Id. at 5, 29 , 47.)

2            Review of these records fails to support petitioner's claim that his reduced vision

3    and impaired comprehension were instrumental in petitioner's failure to timely file his habeas

4    petition.  There is no evidence that petitioner's visual and cognitive impairments during this

5    period were greater than after expiration of the period, when petitioner filed his petition despite

6    an apparent increase in his headache symptoms.  Nor does petitioner assert that these symptoms

7    had improved by the time he filed his petition, or his timely opposition.

8            Additionally, petitioner does not assert that he acted with due diligence during the

9    statutory period.  Petitioner asserts for the first time in his opposition that he was "misled by his

10   appeal attorney that after [the] California Supreme Court's ruling, that ultimately denied

11   review[,] that his appeal process was over with;" that is, that petitioner received "false

12   information from his appeal attorney that all options for further appeals were exhausted."  (Dkt.

13   No. 11 at 1, 2.)  (The court notes that petitioner's counsel was technically correct -- a petition for

14   writ of habeas corpus is not part of the direct appeal process but, rather, is a means to collaterally

15   attack one's conviction and/or sentence.)  As petitioner conceded when he filed his petition, "It is

16   only when [petitioner] conversed with another inmate and discussed his case did Petitioner learn

17   that he could pursue a 'collateral attack,' which unfortunately was discovered after July 14,

18   2011."  (Dkt. No. 1 at 16.)  It is also reasonable to infer that petitioner's ASU placement may, at

19   least in part, have contributed to petitioner's filing delay.

20           Nevertheless, it is well established that ignorance of the law does not constitute an

21   extraordinary circumstance warranting equitable tolling.  Raspberry v. Garcia, supra, 448 F.3d at

22   1154 (pro se petitioner's "lack of legal sophistication is not, by itself, an extraordinary

23   circumstance warranting equitable tolling").  "Ignorance, which might have been remedied by

24   due diligence and inquiry, is no cause for relief."  State of Rhode Island v. Com. of

25   Massachusetts, 39 U.S. 210, 222 (1840) (citations omitted).

26   ////

1    For these reasons, the court finds that petitioner has failed to meet his burden of

2 establishing that his petition was untimely filed due to extraordinary circumstances, and despite

3 petitioner's due diligence.  Pace, supra, 544 U.S. at 418; Bryant, 499 F.3d at 1061.  Therefore,

4 the court need not reach respondent's alternative argument, for partial dismissal of the petition,

5 that petitioner failed to exhaust one of his two claims asserted therein.

6 III.  Conclusion

7    Accordingly, IT IS HEREBY ORDERED that:

8    1.  Respondent's motion to dismiss (Dkt. No. 8), is granted.

9    2.  The petition for writ of habeas corpus filed May 11, 2012 (Dkt. No. 1), is

10 dismissed.

11 DATED:  February 27, 2013

12

13    _____

14    KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

15 park1275.mtd.hc

16

17

18

19

20

21

22

23

24

25

26

9